Good morning, your honors. I'm Joy Schiffer-Miller, here on behalf of Elliot Hawkins, who's a lifelong citizen of Wymore, Gage County, Nebraska, down by Beatrice. Mr. Hawkins is fortunate to be able to come and watch you this morning due to the fact we are in Nebraska. We appreciate the opportunity to present this to you at this time. With regard to the evidence in this case, this matter comes before you on a motion for summary judgment which was granted against Mr. Hawkins and from which we appeal. The matter comes before you, Mr. Hawkins being wrongly accused of a gang rape. Mr. Hawkins was arrested for this incident on or about November 29th of 2011. And he was placed in jail with a $500,000 bond and he was detained in jail until his release when it became more clear that the victim had lied about what had occurred. We are not here suing the victim and I certainly don't blame victims of rape. What we are here on is whether or not Mr. Hawkins' rights were violated by the Gage County Sheriff's Office and the various individuals whom we have sued for their investigation and their actions in obtaining an affidavit for arrest warrant. And they're leaving parts out of the facts when they went to the trial judge to obtain an affidavit for arrest warrant. Are you, in looking at this conscious shocking part here, are you claiming anything that they did this intentionally that they were out to get Mr. Hawkins? We are claiming that there was an intentional element to this. What do you have to support that? Well, the evidence is that Mr. Hawkins in fact was a lifelong resident of Weymour and one of the investigators in this, Mr. Sandersfeld, was also a lifelong resident of Weymour. And the fact of the matter is there was such a direct ignoring of Mr. Hawkins' evidence and a direct intentional looking at Mr. Hawkins and whether or not he was guilty of this offense and other offenses. And the fact that Officer Chavez, after Mr. Hawkins had been cleared of these charges and the charges were dismissed, Investigator Chavez said to him, I'm not done with you yet. So there was vindictiveness on the part of... Is there any history here to where the officers were out to get him because of some confrontation or history between these people? The fact of the matter is Mr. Hawkins' father had run for public office and had been elected and at one point I believe had been removed from public office. So that I would offer up as potentially a reason. But I think any person who went through what Mr. Hawkins went through, whether or not there was personal animus should be... Well, yes, she had the reckless prong and the conscious part of that. So what do you have? I just wanted to kind of put the intentional aside unless you had something really clear. Well, I believe that Mr. If we go to the reckless part, what do you have? With regard to the reckless part, let me go into that. First of all, you did make a comment that Mr. Hawkins had lied. And I believe there were two little areas that you could look at to say whether or not he was not as truthful as maybe one should be. And those two areas were that he stated that he had dropped the victim off at a gas station when in fact he dropped her off in a different area. And there was just a slight difference in where he had had had sexual sex with her. I didn't mean to imply it was material. I just mean an officer could have reasonably said, you didn't give this the truth, and so I'm not done with you. I would find it hard to believe, given the circumstances and his confinement on the huge bond and the news releases and the fact that he was accused of a gang rape, that he would have such animosity toward him for those differences, I guess, in his statements at the Times. So I just submit that. We're getting off track. Getting off track. On the reckless prong, first of all, I think that there's two basic situations here that we have to look at. And the first part is whether or not what they did before they drafted an affidavit, that is under the Fourth Amendment. If they did not really have probable cause to arrest him and drafted a false affidavit or left out material misstatements, that would be under the Fourth Amendment. The second part of this case is what they did after he was arrested and before he was released, I think, falls under the due process and the reckless conduct. What case do you have that tells us that there's a substantive due process claim made out in these circumstances where no trial took place? Where no trial took place? Actually, when I was preparing for my argument today, there is a case that is not from our circuit, but it does do a very good job of analyzing the difference in the claims. And that is Armstrong v. Squadrito, which is 152 Fed 3rd, 564. And it's a Seventh Circuit case, but it does a good job analyzing if there is an arrest after a warrant that it falls under the due process. Did the plaintiff in that case, was he subjected to a trial? He was not subjected to a trial. He was detained because of a child support warrant for his arrest. And it was determined that he never did have the opportunity to, they didn't present him to court. And he sued the jailers, actually, in that case. And so that's why he ended up detained longer than he should have been. And in our case, the emphasis falls on the people that were keeping him under these charges and not coming forward with the evidence. Is that a case that you've cited in your briefing? I have not cited that in my brief. As I said, it is an older case. It's a 1998 case, but I located that when I was preparing for my argument today. I guess my concern is on this particular claim, you cited Winslow and Wilson. In both of those cases, the defendant or the plaintiff there was subjected to a trial. And it was my understanding that when we talk about due process as supporting a civil cause of action arising from this kind of a situation, that we're talking about denial of liberty interest in the sense of an interest in or a right to fair criminal proceedings before a person is denied of his liberty. And from my understanding, in this case, you didn't get that far. There was no trial here, as I understand it. It's difficult to argue when a person is placed in jail under a $500,000 bond, and then it's later reduced to a $250,000 bond, that he was not deprived of his liberty. But isn't all of that adequately covered under the Fourth Amendment claim? Well, the reason I bring it also under a due process claim, I would hope that it would be. But in this case, the defendants claimed that they hadn't done hardly any investigation before they arrested my client. And that they did do more investigation after they arrested my client. And what our contention is is the investigation that they did after his arrest was so one-sided that he continued to be deprived of his rights to due process in the criminal proceedings. And so I do believe that the fact that he was deprived of his liberty and jailed during that whole time does fall under the due process prong. Because they would argue that after, you know, since they did an affidavit and arrested him, that then it's turned over to the court system. And they're not responsible for anything that happens after that. And I think the Squadrito case does address that issue because of the fact that that person was never criminally put to or didn't have to go to court. They found that he was innocent. I think the fact that they finally conceded my client's innocence should not deprive him of his rights in this case. I see that I'm into my rebuttal time. And I know that there's things that I'm going to want to address after counsel argues. So I will reserve the rest of my time until. Let me ask you this. You know, the obvious wrongdoer here is the woman who made the false charges, Jennifer Valenta. She would be one of them, yes. Is there any pending suit against her or is she judgment-proof? I've got to assume she's judgment-proof. She was actually jailed as a result of making these allegations against my client. But, Your Honor, the deputies knew that she had not submitted to a rape kit. The evidence is that she'd been to the doctors in between the time that she'd been there the one night and had refused to have anybody look at her. And she'd had an actual vaginal inspection. It's in this record, at least by the officers anyway, that their understanding was that victims of rape are often not cooperative. And then that was their training. But the officer Sandersfeld made a note that he had the medical records, and it's found at page 174 of the appendix in this case. And if he had the medical records, which are found at page 170, or if he has the medical records, he knows that she refused to do a rape kit that night. Everybody knows that. But in addition, that she was actually examined by a doctor two days later, and she had not had any injury to her. And so they cannot ignore that and place my client in jail. Their argument is Gage County's argument, is Shealy didn't know that information when he went to get the warrant. They're claiming that he didn't know that. But he also didn't put in the warrant that she had not submitted to a rape kit. He left that part out of the warrant. And so I've outlined in detail all of the things that, and I believe that there could be a dispute as to whether or not he did know that. And is intentionally covering that up. We didn't get to have a trial in this case. I think it should have gone to trial. So I will reserve the rest of my time for rebuttal. Thank you. Good morning, Ms. Johnson. Good morning. May it please the court, my name is Brandi Johnson. I represent the county of Gage, Nebraska, and the four officers who've been individually sued by Mr. Hawkins in this matter, namely Brandon Schley, Tony Shepardson, Rob Sandersfeld, and John Chavez. And I'd like to jump in. See, I meant to tell Ms. Schiffermiller and you two, but that podium can go down if you need to lower it. That might help. Thank you. Ms. Johnson. I'd like to jump right in to the line of questioning that you, Judge Riley, were opposing to my opposing counsel in the initial argument as to the intentional element of the due process claim that's been raised here. First, I would just note that it was actually Shepardson, Officer Shepardson, who was a lifelong resident of Weimar, not Officer Sandersfeld. However, Officer Shepardson submitted an affidavit in this case specifically stating that although he knew Mr. Hawkins, he had no ill will towards him. There isn't any history there where he would have held any malice towards him. That's really a non-issue here. There isn't any evidence in the record of malice on the part of any of the officers. I'm just curious. I apologize for interrupting. To this Jennifer Valenta, she was prosecuted for false claim? Yes, Judge. Immediately following the clearing of Mr. Hawkins of all charges and the dismissal by the prosecutor of those charges, Ms. Valenta, a warrant was issued for her arrest. She was charged and she was convicted and spent time in prison on false reporting charges. Yes. Moving back to the reckless element that was raised, knowing that there was no evidence of an intentional element under the due process clause, the courts have held that a reckless investigation requires one of three circumstances, that there be coercion or threats towards witnesses or the suspect, that there be some type of manufactured false evidence, that there be some kind of systematic pressure to implicate a suspect in spite of contrary evidence. None of those three circumstances is present here. There was no coercion or threats towards Mr. Hawkins exerted. They didn't force him to falsely confess or anything of that nature. Is it any allegation in this case that there was a manufacturing of false evidence of any kind? Counsel, is it your position that there was no constitutional violation here or violation of a federal statute? Absolutely. The trial court correctly found that there was no constitutional violation under the... Something beyond that. There was both probable cause to arrest Mr. Hawkins under the facts that were set forth in the application for his arrest and there was also no facts in the evidence whatsoever to permit a reasonable inference of any type of reckless investigation that would have violated due process. Well, do you think that a substantive due process or a civil action under Section 1983 based on this substantive due process theory can be made out in this kind of case where there was no trial? No. That's one of the points I did want to return to is the one you had raised there was that it is significant there was no trial in this matter. Mr. Hawkins was cleared of all charges after seven weeks of investigation after his arrest. The cases that have held that there may be a substantive due process violation have generally... The vast majority of them have involved cases that have gone to trial. And I think what's significant there is that where there is no trial, there isn't any reasonable inference that can be drawn that the officers have systematically gone after the suspect and tried to implicate him in a crime that he didn't commit. There's not that subjective element that can be inferred there where, like in this case, they didn't persist to try to implicate him in the crime. As soon as the truth was uncovered, they immediately went to the prosecutor and ensured that the charges were dismissed. You have to admit that he was in jail for quite a while, and you'd think that it could have speeded up the process that it gets pretty close to... Mr. Hawkins did... I don't mean to undermine the significance of the 15 days that Mr. Hawkins did spend in jail before he was able to bond out. But certainly, these officers acted as quickly as they could under the circumstances. They followed through on all of the red flags that were drawn. They were needing to have DNA analysis of certain evidence, physical evidence at the scene. There's time constraints to that, and evidence shows that these officers actually fast-tracked that to the point that they could. They enlisted the assistance of the University of Nebraska Medical Center rather than the State Patrol to analyze the DNA evidence at a substantially greater cost to the department, doing so for the specific purpose of obtaining a faster result. And I think Officer Sandersfeld testified in his affidavit that he was specifically concerned... in her charge, her claim that he and others gang-raped her. Well, she certainly presented herself as a true rape victim according to the training of the officers. Not only that, but she clearly identified Mr. Hawkins. There was no question about the identity of him as the alleged perpetrator, given Officer Sheperson's knowledge of him from the Wymore area and the unique description of his vehicle. And then following the report of Ms. Valenta, they went to the scene that she described in some detail and tried to locate the place where she claimed this had happened. They found an area near a body of water with tire tracks consistent with the unique vehicle that she said Mr. Hawkins was driving. And they found pieces of toilet tissue present there and certain alcohol cans and things that were consistent with the story that she had given. So there was all of that evidence to establish probable cause. And in addition, they were under some exigent circumstances here where... Well, but by that time, they also had... he had denied it, said it was consensual. He was the only one. It wasn't a gang rape. So all you had is she said, he said, and they both agreed, well, he did lie about where it occurred, but it was both at the lake. So is that enough to lock somebody up? I absolutely believe that the officers had probable cause under the circumstances here. If it were to be otherwise, I think there's a danger that officers are going to be asked to categorically disbelieve alleged rape victims for the fact that they might not be able to, they might not be willing to submit to a rape kit or they might not be willing to immediately cooperate with an investigation. I mean, there's that danger here. I think the officers absolutely have probable cause. You understand my point. She says one thing, he says another. And they agree on, since they agree on, they were together at a time. And I don't remember anything from the record that they had anything to verify either one of their stories. Well, there was a physical evidence that I mentioned before that tended to support Ms. Valenta's story. They actually didn't speak to Mr. Hawkins until after his arrest because of the fact that they were concerned about the threats that he had allegedly made to she and her family if she were to report the crime to law enforcement. But counsel, in the face of his vigorous denial and the fact that Ms. Valenta had, on a prior occasion, made similar false accusations, isn't that true? No, absolutely not. It is not true that Ms. Valenta had made a false accusation of rape against someone previously. The record shows that she alleged that she had been raped by a correctional officer when she was in jail at one time a couple of years previously. Which turned out to be false. Is that right? No, no. The evidence shows that the correctional officer was convicted of sex on a confined person and consent or non-consent was not an element of the charge. Consent or non-consent was a disputed issue and wasn't pertinent to the charge that he was convicted of. So as far as these officers knew, she had been a credible prior witness in that case. They did not have any knowledge that she had made some kind of false accusation. So she was clear of that. I guess I misunderstood some of the briefing on her past action. But you took a lot of time to call in the highway patrolman, who was the acknowledged expert that they knew about, who cleared this up quite promptly. Officer Ward was brought in on December 5th, which was five days, I believe, after the arrest of Mr. Hawkins on November 29th. They had interviewed Mr. Hawkins on the 29th and the 30th of November and had brought in Officer Ward within four days after that. He's out of Lincoln, and they had brought him down to Beatrice to assist them with the vehicle because of his expertise in sexual assault cases. What was the situation where she had some injuries that she said had arisen from this escapade and he quickly discerned that it was unlikely that they could have and that was sort of the catalyst that brought this to an end, wasn't it? Well, Officer Ward, upon seeing the photographs that Ms. Valenta had submitted of her injuries, suspected that they, he thought that they seemed to him like they might be self-inflicted. And the officer specifically followed up on that potentially exculpatory lead by consulting with a forensic nurse who actually didn't offer any opinion about whether the wounds seemed self-inflicted to her. She wasn't able to offer an opinion on that. So really that was Officer Ward's opinion. Instead, her opinion is then related to the timing of the injuries, which I think was only discernible to her in her professional medical experience and not something that a layperson would have necessarily seen. Honestly, when these officers saw the photographs of these alleged injuries, they're not medical professionals. I don't think it's obvious to any layperson that they would have been self-inflicted. I think we can all agree that it was very unusual circumstances that a victim would actually self-inflict injuries to her genitalia to support a very detailed false rape accusation like this. So I don't think that the officers can be faulted for not having recognized that immediately. It was something that they used the expertise of other people to help them reach the conclusion that Ms. Valenta was indeed making a false report there. There's a very high standard set forth in the case law for a due process claim. I don't think it could be set forth in any more serious terms than what it is, where there needs to be evidence of an abuse of official power that's literally conscience-shocking. There has to be knowing or intentional behavior designed with malice or sadism to violate Mr. Hawkins' constitutional rights. There just isn't any evidence to cross that line. At most, perhaps with the benefit of 20-20 hindsight, you might say that some things could have been done differently, but the case law is clear that that doesn't state a claim. And there's no question that these officers are faced with a very difficult responsibility to protect the public, and that's particularly manifest when they're dealing with rape accusations that were, as Judge Elliot said, he said, she said, accusations where credibility was the central issue that they needed to figure out. And I don't know that it's easy for any officer to find one piece of evidence that makes or breaks someone's credibility. They conducted a reasonable investigation here. And when law enforcement is subjected to civil litigation in situations like this for doing their job, I think it does have the real danger of impacting people's willingness to enter into public service when they have to be in fear of cases like this, and that's, of course, one of the rationales behind the doctrine of qualified immunity, and we submit that this is a case that really highlights the importance of the qualified immunity doctrine. The case law provides that due process claims are to be reserved for the most rare, the most egregious, and the most outrageous conduct on the part of law enforcement officers, and Judge Swart had it right that none of the evidence in this case rises to that level. We respectfully submit that the trial court decision to grant qualified immunity to these four officers and correspondingly to the county should be affirmed in its entirety. I'd be happy to respond to any questions the court may have in my time remaining. I think I may just have a minute. Okay. Thank you very much. Thank you. Ms. Rudolph, how much time is Ms. Schiffer-Miller out? She has two minutes, Your Honor. Okay. Thank you, Your Honors. First of all, with respect to whether there were coercion or threats of Mr. Hawkins, his testimony was when he was in jail that the investigators came down and said he wasn't going to get out of jail until he was given the name of the other three persons who were involved. There was coercion and threats. With respect to manufacturing of the evidence, the police willingly took in these photographs that Ms. Valenta brought in, claiming that these were her injuries that had occurred. And as you noted, Jeff Ward, the state patrolman, said he's the one that identified that these injuries were likely not caused in that fashion. He in his affidavit says he wasn't an expert either, but he said he could tell from looking at the fresh nature of those injuries that they were not caused five or seven days. The length of time earlier that Ms. Valenta claimed they were caused. In this case, Investigator Schley said, or Deputy Schley said, that he had gone to the hospital. He had gotten the rape kit. The rape kit says, did you have any injuries that resulted in bleeding? And it says no. Did you have any anal intercourse? And the rape kit taken by the hospital at the time says no. What I'm saying is there's at least a dispute as to fact as to whether or not the investigator did know that or did he just ignore that. And I think if he ignored that, that is conscience-shocking in this case. I don't dispute that the police have a hard job to do, but they have to be even-handed. They refused to interview anybody at the Barnston Bar where this woman said after she had been raped, gang raped by four individuals, that she had gone and had dinner with my client at the Barnston Bar. They did not go to the Barnston Bar and even interview a person who had previously been a dispatcher for the police department. To say that this is an even-handed investigation is not within the realm of possibility. This was done, and it was unconstitutionally done. And at a minimum, we should get our day in court and a trial on it. Okay, thank you. Thank you. Thank you both for your presentations, and we will take it under advisement and be back to you as soon as possible. Thank you.